FILED

2024 Dec-09 AM 11:56
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **MICHAEL CHAD VERNON, et al.,** | ] | |
| | ] | |
| **Plaintiffs,** | ] | |
| | ] | |
| **v.** | ] | **2:24-cv-500-ACA** |
| | ] | |
| **DERAMUS, et al.,** | ] | |
| | ] | |
| **Defendants.** | ] | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Michael Chad Vernon was shot fifteen times by men who targeted him for working as a confidential informant for the Jefferson County Sheriff's Department. He and his wife, Plaintiff Amy Kathleen Hunt, sue Sheriff Mark Pettway, Lieutenant Byron Deramus, Sergeant Heath Boackle, Lieutenant Jude Washington, Detective Steve Stewart, Detective Brasher, and two fictitious defendants, asserting the following claims:

1) All defendants in their official capacities, and all defendants except Sheriff Pettway in their individual capacities, violated Mr. Vernon's and Ms. Hunt's substantive due process rights by exposing them to a state-created danger ("Count One");[1]

2) State law negligence against all defendants in their individual and official capacities ("Count Two");

---

[1] The amended complaint specifically identifies Sheriff Pettway only "[i]n his capacity as Chief Policy Maker for the Jefferson County, Alabama Sheriff's Department." (Doc. 4 at 1–2; *compare id.* ¶¶ 14–21).

3)    State law wantonness against all defendants in their individual and official capacities ("Count Three");

4)    Sheriff Pettway, in his official capacity, failed to train, supervise, or discipline officers in their use of private citizens as confidential informants ("Count Four");[2] and

5)    Lt. Deramus and Sgt. Boackle, in their individual and official capacities, failed to train and supervise the investigators in how to prevent violations of constitutional rights, in violation of the Fifth and Fourteenth Amendments ("Count Five").

(Doc. 4 ¶¶ 53–78).

Defendants move to dismiss the complaint on the grounds that it is a shotgun pleading, it is barred by the statute of limitations, and they are entitled to qualified and state immunities. The court **WILL GRANT** the motion. Because Eleventh Amendment immunity bars all official capacity federal claims and qualified immunity bars all individual capacity federal claims, the court **WILL DISMISS** the federal claims **WITH PREJUDICE**. The court **DECLINES** to exercise supplemental jurisdiction over the remaining state law claims and **WILL DISMISS** those claims **WITHOUT PREJUDICE**.

## I.    BACKGROUND

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must accept as true the factual allegations in the complaint and construe them in the light most favorable to the plaintiff. *Butler v. Sheriff of Palm Beach*

---

[2] The amended complaint does not specify whether this claim is brought under state or federal law. (*See* doc. 4 ¶¶ 68–74). But Plaintiffs' response clarifies that the claim is brought only under federal law. (Doc. 22 at 7–8).

*Cnty.*, 685 F.3d 1261, 1265 (11th Cir. 2012). The court describes the factual allegations in that light.

Mr. Vernon became a confidential informant for the Jefferson County Sheriff's Department Narcotics Division in 2017. (Doc. 4 ¶ 22). Three of the investigators for whom Mr. Vernon worked were Lt. Washington and Detectives Stewart and Brasher. (*Id.* ¶ 33). Lt. Deramus and Sgt. Boackle supervised the detectives. (*Id.*).

Beginning in November 2021, the investigators and supervisors for whom Mr. Vernon was working became "sloppy" (*id.* ¶ 24), and "rush[ed] several controlled buys, causing multiple drug dealers to inform Mr. Vernon that they believed that Mr. Vernon had 'put them out' (that is, assisted law enforcement)" (doc. 4 ¶ 28). On one occasion, Lt. Deramus, Sgt. Boackle, Lt. Washington, and Detectives Stewart and Brasher joked with Mr. Vernon on the street before a controlled buy, after which the target dealer became suspicious and referred to Mr. Vernon as a cop. (*Id.* ¶ 41). After Mr. Vernon indicated his concern for his safety, the investigators assured him that they prioritized his safety but continued to use him "in way too many controlled buys way too close to Mr. Vernon's home and would use his name with dealers." (*Id.* ¶ 29; *see also id.* ¶ 33).

In late March or early April 2022, Mr. Vernon told Lt. Washington, Detective Stewart, and Detective Brasher that he had received threats to his life and safety.

(Doc. 4 ¶¶ 34, 43). Detectives Stewart and Brasher promised to arrange protection for Mr. Vernon and Ms. Hunt but failed to do so, and Sgt. Boackle refused to arrange any protection because he did not believe Mr. Vernon was in danger. (*Id.* ¶ 34, 43–44).

On April 18, 2022, unidentified individuals "stalked and chased" Mr. Vernon. (*Id.* ¶ 35). He told "Defendants" about this incident and was informed that the Sheriff's Department would provide funds so he could leave town, but he never received any funds. (*Id.*). On another occasion, some "hit men" went to the house of a friend of Mr. Vernon looking for Mr. Vernon and his family. (Doc. 4 ¶ 38). Although Mr. Vernon and Ms. Hunt asked unspecified people for protection, those people just told them to call 911. (*Id.*).

On April 21, 2022, Detectives Brasher and Stewart told Mr. Vernon that they were waiting for approval from "higher ups" to give him funds so he could leave town. (*Id.* ¶ 36). Around 4:00 p.m. that day, the two men who had gone to Mr. Vernon's friend's house several days earlier shot Mr. Vernon fifteen times in the front yard of his house. (*Id.* ¶ 39). Mr. Vernon was hospitalized for a month, after which the Sheriff's Department relocated him and Ms. Hunt to a hotel in Gardendale under false names. (Doc. 4 ¶ 40). Two months later, the Sheriff's Department stopped communicating with Mr. Vernon and Ms. Hunt and stopped paying for the hotel. (*Id.*).

4

## II.    DISCUSSION

Defendants move to dismiss all claims on the grounds that (1) the amended complaint remains a shotgun pleading; (2) the initial complaint was a shotgun complaint and the amended complaint was filed outside the statute of limitations; (3) Defendants have qualified immunity from all federal claims; and (4) Defendants have state immunity from all state claims. (Doc. 13; doc. 14 at 5–22). Before addressing those arguments, however, the court must address Ms. Hunt's standing to bring these claims.

### 1.    Standing

Article III of the Constitution limits federal courts to deciding "Cases" or "Controversies." U.S. Const. art. III, § 2. Absent a case or controversy, the court lacks subject matter jurisdiction over a case. *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 48 F.4th 1236, 1242 (11th Cir. 2022) (en banc). One element of a case or controversy is standing. *Id.* To show standing, the plaintiff must allege facts that plausibly establish that 1) she "experienced an injury that is concrete and particularized and actual or imminent, 2) the defendants' conduct is the cause of the plaintiff's injury, and 3) a decision by the court would likely redress the plaintiff's injury." *Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883, 889 (11th Cir. 2023), cert. denied sub nom. *Brinker Int'l, Inc. v. Steinmetz*, 144 S. Ct. 1457 (2024); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (holding that because

standing is "an indispensable part of the plaintiff's case, each element must be supported . . . with the manner and degree of evidence required at the successive stages of the litigation"); *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 996 (11th Cir. 2020) ("[A]t the motion-to-dismiss stage, [the plaintiffs] bore the burden of alleging facts that plausibly establish their standing.").

"[A] litigant must assert his own legal rights and interests and may not ordinarily rely on the rights and interests of third parties." *Harris v. Evans*, 20 F.3d 1118, 1121 (11th Cir. 1994). Accordingly, if Ms. Hunt were attempting to bring these claims on Mr. Vernon's behalf, she would lack standing. However, it is clear from the complaint that she seeks damages on her own behalf for the emotional distress she suffered from her husband's injuries, the loss of his society and companionship, the loss of his services, and the loss of his emotional support. (Doc. 4 ¶¶ 57, 63, 67, 74, 78). Emotional distress and loss of consortium are traditionally recognized forms of harm for purposes of Article III standing. *See, e.g.*, *Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 943 (11th Cir. 2021) (finding standing where the plaintiff suffered emotional distress and wasted time); *cf. Lujan*, 504 U.S. at 564 n.2 (stating that a case where a plaintiff alleged loss of consortium "involve[d] *actual* harm" and so "the existence of standing [was] clear"). Accordingly, because Ms. Hunt brings these claims on her own behalf for damages

she suffered as a result of Mr. Vernon's shooting, the court has subject matter jurisdiction over her claims and will proceed to address the merits.

    2.    <u>Shotgun Pleading</u>

Defendants contend that the court should dismiss the amended complaint as a shotgun pleading because (1) no count incorporates any of the previous paragraphs, thereby "implicitly incorporat[ing] every single allegation and paragraph, including incorporation of prior counts as to each alleged claim"; and (2) two of the counts fail to adequately identify the legal basis for the claim. (Doc. 14 at 9–10). The court disagrees that this complaint is a shotgun pleading.

A shotgun pleading is one that makes it "impossible to comprehend which specific factual allegations the plaintiff intends to support which of his causes of action, or how they do so." *Est. of Bass v. Regions Bank, Inc.*, 947 F.3d 1352, 1358 (11th Cir. 2020); *see also Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1325 (11th Cir. 2015) (explaining that dismissal of a complaint as a shotgun pleading "is appropriate where it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief") (quotation marks omitted). The Eleventh Circuit has identified typical hallmarks of shotgun pleadings, *see Weiland*, 792 F.3d at 1321–23, but has also explained that "[t]he unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way

or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests," *id.* at 1323.

Plaintiffs' failure here to explicitly incorporate factual allegations into each count does not make their amended complaint a shotgun pleading. Similarly, although Counts Four and Five do not explicitly reference the constitutional provision or state law claim at issue, it is clear that those counts assert claims that the defendants named failed to train or supervise other officers. (Doc. 4 ¶¶ 68–78). Both the court and Defendants are capable of understanding what the claims are and the factual grounds on which those claims rest. Accordingly, the court declines to dismiss the amended complaint for being a shotgun pleading. *See Weiland*, 792 F.3d at 1326 (finding that a complaint was not a shotgun pleading because "whatever their faults, these two counts are informative enough to permit a court to readily determine if they state a claim upon which relief can be granted").

### 3.    Statute of Limitations

Defendants contend that the statute of limitations bars this complaint because (1) Plaintiffs filed the initial complaint one day after the limitations period expired; and (2) even if the initial complaint were timely, it was a shotgun pleading that failed to put them on notice of the claims against them, and the amended complaint does not relate back. (Doc. 14 at 5–7).

"All constitutional claims brought under [42 U.S.C.] § 1983 are tort actions, subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought." *McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008). Alabama has a two-year statute of limitations for tort actions. Ala. Code § 6-2-38(*l*). The parties agree that the statute of limitations began running on April 21, 2022. (Doc. 4 ¶ 39; doc. 14 at 2; doc. 22 at 1–2). Two years from April 21, 2022 is April 21, 2024. But April 21, 2024 was a Sunday, so the limitations period actually expired on April 22, 2024. *See* Fed. R. Civ. P. 6(a)(1)(C). Plaintiffs filed their initial complaint on that date, tolling the limitations period. *See* Fed. R. Civ. P. 3 ("A civil action is commenced by filing a complaint with the court.").

Defendants contend that the initial complaint did not toll the limitations period because the court found that it was a shotgun pleading that required repleading. (Doc. 14 at 6; doc. 23 at 1–2). But they offer no authority for that proposition, nor do they present any argument about why the filing of a shotgun pleading is inadequate to toll the statute of limitations. (*See* doc. 14 at 6; doc. 23 at 1–2). Rule 3 provides that "[a] civil action is commenced by filing a complaint with the court." It offers no caveats about how well-pleaded the complaint must be, despite the fact that Federal Rule of Civil Procedure 12 expressly considers the possibility that a complaint may be "so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e); *see also Wagner v. First Horizon Pharm. Corp.*, 464 F.3d

1273, 1275 (11th Cir. 2006) (holding that the court's "supervisory obligation to *sua sponte* order repleading" when faced with a shotgun complaint arises under Rule 12(e)). Defendants' argument is not sufficient for the court to find, as a matter of law, that a shotgun pleading fails to toll the statute of limitations given the plain language of Rule 3.

Defendants also argue that the amended complaint, which was filed after the limitations period expired, does not relate back to the initial complaint. (Doc. 14 at 7). Federal Rule of Civil Procedure 15 provides that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). The initial complaint identified Lt. Deramus, Sgt. Boackle, Lt. Washington, Detective Brasher, and two fictitious defendants and described the factual circumstances at issue, although it failed to set out any claims based on those circumstances. (Doc. 1 ¶¶ 2–7, 10–13). The amended complaint asserts claims arising out of the same circumstances set out in the initial complaint. (*See generally* doc. 4). Accordingly, the amended complaint relates back to the initial complaint under Rule 15(c)(1)(B).

Finally, Defendants argue for the first time in their reply brief that, even if the initial complaint was timely and the amended complaint related back as to

Lt. Deramus, Sgt. Boackle, Lt. Washington, and Detective Brasher, it does not relate back as to Sheriff Pettway, Detective Stewart, and one fictitious defendant, none of whom were named in the initial complaint. (Doc. 23 at 2–4). Defendants could have asserted this argument in their initial brief but they did not do so. (*See* doc. 14 at 7). The court does not consider arguments asserted for the first time in reply briefs.[3] *See Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005). Accordingly, the court declines to dismiss this action as barred by the statute of limitations.

### 4.    Eleventh Amendment Immunity

Counts One, Four, and Five assert federal claims. (Doc. 4 ¶¶ 53–57, 68–78; *see supra* note 1). And the caption of the amended complaint identifies Defendants in their official capacities. (*Id.* at 1–2). As a result, the court construes the amended complaint to assert official capacity claims against each defendant.

The Eleventh Amendment bars federal claims brought against state officials in their official capacities. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("[The Eleventh Amendment] bar remains in effect when State officials are sued for damages in their official capacity. That is so because . . . a judgment against a public servant in his official capacity imposes liability on the entity that he represents.")

---

[3] Even if Defendants had made this argument in their initial brief, they fail to address the proper standard for evaluating relation back under Rule 15(c)(1)(C), which is whether the newly named defendants "knew or should have known that [they] would have been named as . . . defendant[s] but for an error," *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 548 (2010). Defendants make no argument regarding that standard (doc. 23 at 2–3), so the court does not address whether Plaintiffs can satisfy it.

(cleaned up). It "represents a constitutional limitation on the federal judicial power established in Article III." *McClendon v. Ga. Dep't of Cmty. Health*, 261 F.3d 1252, 1256 (11th Cir. 2001). And although the bar is waivable, *see id.* at 1257, the court can nevertheless raise the bar on its own motion, *id.* at 1259; *see also Whiting v. Jackson State Univ.*, 616 F.2d 116, 127 n.8 (5th Cir. 1980) ("Although neither [defendant] has raised the bar of the [E]leventh [A]mendment, we consider it sua sponte because a defense based upon the [E]leventh [A]mendment is in the nature of a jurisdictional bar.").[4]

Because Defendants clearly seek dismissal of all claims against them (*see* doc. 13 at 1) (moving the court "to dismiss any and all claims"), and Alabama has unequivocally asserted its lack of consent to being sued, Ala. Const. art. I, § 14 ("[T]he State of Alabama shall never be made a defendant in any court of law or equity."), the court ordered Plaintiffs to show cause why the court should not dismiss the official capacity federal claims for lack of jurisdiction (doc. 24). Plaintiffs did not respond to the order to show cause. Accordingly, the court **WILL DISMISS** all official capacity claims brought in this lawsuit **WITHOUT PREJUDICE** because Defendants in their official capacities are entitled to Eleventh Amendment immunity. Because Count Four asserts only an official capacity claim against Sheriff

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

Pettway, this ruling results in the dismissal of that count. The remaining counts, however, also assert individual capacity claims, so the court proceeds to discuss Defendants' arguments about those counts.

    5.    <u>Qualified Immunity</u>

Counts One and Five assert federal individual capacity claims against Lt. Deramus, Sgt. Boackle, Lt. Washington, Detectives Stewart and Brasher, and two fictitious defendants. (Doc. 4 ¶¶ 53–57, 75–78). Defendants contend that they are entitled to qualified immunity from each of those claims. (Doc. 14 at 10–19).

"Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Shaw v. City of Selma*, 884 F.3d 1093, 1098 (11th Cir. 2018). Everyone agrees that the defendants were performing discretionary functions (*see* doc. 4 ¶¶ 14–20; doc. 14 at 11; doc. 22 at 11), so the plaintiffs bear the burden of showing that each officer's conduct violated a constitutional right and that the right was clearly established at the time of the conduct. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). To determine whether a right was clearly established, the court looks to binding decisions of the Supreme Court of the United States, the Court of Appeals for the Eleventh Circuit, and, in this case, the Supreme Court of Alabama. *Glasscox v. City of Argo*, 903 F.3d 1207, 1217 (11th Cir. 2018).

A right is clearly established only if "the contours of the right were sufficiently clear that every reasonable officer would have understood that what he was doing violates that right." *Jarrard v. Sheriff of Polk Cnty.*, 115 F.4th 1306, 1323 (11th Cir. 2024) (quotation marks omitted). A plaintiff can show that a right was clearly established in three ways: (1) "case law with indistinguishable facts clearly establishing the constitutional right," (2) "a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right," or (3) showing "that officials engaged in conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Id.* at 1323–24 (quotation marks omitted). Plaintiffs rely on the second and third methods. (Doc. 22 at 23–24). The court will address Count One first, followed by Count Five.

   *i.  Count One*

In Count One, Plaintiffs claim that Defendants violated their substantive due process rights by exposing them to a state-created danger, in violation of their substantive due process right.[5] (Doc. 4 ¶¶ 53–57). Defendants argue that Plaintiffs have not stated a claim for violation of their substantive due process right and that such a right is not clearly established. (Doc. 14 at 13–14, 17–19).

---

[5] As stated above, although Plaintiffs name Sheriff Pettway in Count One, they identified him only in his official capacity. (*See* doc. 4 at 2). As a result, the court does not construe the amended complaint to assert Count One against Sheriff Pettway in his individual capacity and it will not address whether he is entitled to qualified immunity. Even if the court did so construe the amended complaint, Sheriff Pettway would be entitled to qualified immunity for the same reason the other defendants are.

When a claim involves a party "in a noncustodial relationship with the state[,] . . . conduct by a government actor violates substantive due process only if the act can be characterized as arbitrary or conscience shocking in a constitutional sense." *A.W. ex rel. J.W. v. Coweta Cnty. Sch. Dist.*, 110 F.4th 1309, 1316 (11th Cir. 2024) (quotation marks omitted). The Eleventh Circuit has "never held that an official's deliberate indifference in a noncustodial setting can shock the conscience. Indeed, even allegations of intentional misconduct seldom shock the conscience." *Id.* (citation omitted); *see also Waddell v. Hendry Cnty. Sheriff's Off.*, 329 F.3d 1300, 1305 (11th Cir. 2003) ("[E]ven conduct by a government actor that would amount to an intentional tort under state law will rise to the level of a substantive due process violation only if it also shocks the conscience.") (quotation marks omitted). This is because the Supreme Court has cautioned courts "against expanding the concept of substantive due process." *Waddell*, 329 F.3d at 1304.

The Eleventh Circuit has stated in dicta that when a case involves a noncustodial setting, "a substantive due process violation would, at the very least, require a showing of deliberate indifference to an extremely great risk of serious injury to someone in Plaintiffs' position." *Id.* at 1306. The Eleventh Circuit emphasized that the possibility of a deliberate-indifference-to-extremely-great-risk standard "is the low point—may well be too low a point—for a possible standard in a case like this one." *Id.* at 1306 n.5. The Court explained that it was not ruling out

15

the possibility that "that the correct legal threshold for substantive due process liability in a case like this one is actually far higher," such as "deliberate indifference to a substantial certainty of serious injury" or even the official acting "maliciously and sadistically for the very purpose of creating a serious injury." *Id.* (quotation marks omitted).

The Eleventh Circuit has previously found unconvincing a substantive due process claim made based on an injury suffered by a confidential informant. In *Vaughn v. City of Athens*, 176 F. App'x 974, 976 (11th Cir. 2006), police officers received information that a drug dealer would kill a confidential informant but nevertheless sent the confidential informant to a controlled buy without attempting to provide any protection. The drug dealer killed the confidential informant and the administratrix of his estate filed suit against the officers. *Id.* at 975–76. The Eleventh Circuit held that the officers' conduct did not shock the conscience because the plaintiff did not allege the confidential informant was unaware of the risks or that the officers had acted maliciously and the police had not forced the confidential informant to act as an informant. *Id.* at 977. Although *Vaughn* is not binding precedent, the court finds it persuasive because "non-binding persuasive authority can be used to indicate that a particular constitutional right is not clearly established," *Corbitt v. Vickers*, 929 F.3d 1304, 1319 n.14 (11th Cir. 2019), and its analysis is consistent with Eleventh Circuit precedent on substantive due process.

The substantive due process right on which Plaintiffs rely is not clearly established. Although they contend that the facts at issue in this case shock the conscience because Defendants "recklessly compromised" Mr. Vernon's identity, promised to protect him, and then failed to do so (doc. 22 at 23–24), Eleventh Circuit authority indicates that even intentional conduct—much less reckless conduct—may not qualify as a substantive due process violation, *see A.W. ex rel. J.W.*, 110 F.4th at 1316. And as in *Vaughn*, the allegations here are that Mr. Vernon voluntarily agreed to work as a confidential informant and that he was aware of the risks. (*See* doc. 4 ¶¶ 22–23, 29, 34–36); *Vaughn*, 176 F. App'x at 977. Moreover, Plaintiffs make no non-conclusory allegation that any of the defendants acted maliciously or sadistically. (*See* doc. 4 ¶¶ 3–6, 22–52); *Vaughn*, 176 F. App'x at 977; *cf. Waddell*, 329 F.3d at 1306 n.5. Even construed in the light most favorable to Plaintiffs, the court cannot find that either a broad principle of law or the egregiousness of Defendants' conduct clearly establishes the substantive due process right on which Plaintiffs rely. *See Jarrard*, 115 F.4th at 1323–24.

The court therefore **WILL GRANT** the motion to dismiss the individual capacity claims asserted in Count One against Lt. Deramus, Sgt. Boackle, Lt. Washington, Detectives Stewart and Brasher, and the two fictitious defendants **WITH PREJUDICE** on the ground that they are entitled to qualified immunity.

      ii.    *Count Five*

In Count Five, Plaintiffs assert that Lt. Deramus and Sgt. Boackle failed to train and supervise the investigators with whom Mr. Vernon was working as a confidential informant. (Doc. 4 ¶¶ 75–78). Defendants contend that they are entitled to qualified immunity because a single incident cannot establish a pattern or practice and Plaintiffs have not shown a violation of a clearly established right. (Doc. 14 at 14–19).

"[A] supervisor can be held liable for failing to train his or her employees only where the failure to train amounts to deliberate indifference to the rights of persons with whom the officers come into contact." *Keith v. DeKalb Cnty.*, 749 F.3d 1034, 1052 (11th Cir. 2014) (quotation marks omitted; alteration accepted). In other words, a plaintiff making a claim that a supervisor failed to train subordinates "must demonstrate that the supervisor had actual or constructive notice that a particular omission in their training program cause[d his] employees to violate citizens' constitutional rights, and that armed with that knowledge the supervisor chose to retain that training program." *Id.* (quotation marks omitted). Normally this showing requires "a pattern of similar constitutional violations by untrained employees." *Id.* at 1053 (quotation marks omitted; alteration accepted).

Defendants contend that Plaintiffs have not described any other incidents and therefore do not show a pattern of constitutional violations. (Doc. 14 at 16). Plaintiffs contend that the need to train was so obvious that liability can attach with only a

single incident. (Doc. 22 at 20–22). In support, they cite *City of Canton v. Harris*, 489 U.S. 378, 390 (1989), in which the Supreme Court stated in dicta that a city's failure to provide training might support municipal liability if "the duties assigned to specific officers or employees [make] the need for more or different training . . . so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need" by failing to provide that training. The Court hypothesized that a city that armed its police officers with firearms, knowing that the "officers [would] be required to arrest fleeing felons," would "so obvious[ly]" require training on "the constitutional limitations on the use of deadly force . . . that failure to do so could properly be characterized as deliberate indifference to constitutional rights." *Id.* at 390 n.10 (quotation marks omitted).

*Canton* does not clearly establish that a single incident suffices to hold a supervisor liable for failure to train or supervise. It lays out a hypothetical situation in which the need to train could be clearly established without any incidents, but that hypothetical situation is dicta and therefore cannot clearly establish the law. *See Hamilton ex rel. Hamilton v. Cannon*, 80 F.3d 1525, 1530 (11th Cir. 1996), *abrogated on other grounds as recognized by Waldron v. Spicher*, 954 F.3d 1297, 1306 (11th Cir. 2020) ("The law cannot be established by dicta. Dicta is particularly

unhelpful in qualified immunity cases where we seek to identify clearly established law.").

Other precedent from the Supreme Court reinforces this conclusion. In *Connick v. Thompson*, 563 U.S. 51, 54 (2011), prosecutors violated *Brady v. Maryland*, 373 U.S. 83 (1963) by failing to disclose exculpatory evidence to a defendant, who later sued the district attorney's office for damages. The Supreme Court held that the office could not be held liable for failure to train based on a single *Brady* violation. *Connick*, 563 U.S. at 54. The Court acknowledged that *Canton* "sought not to foreclose the possibility, however rare, that the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations." *Id.* at 64. But the Court distinguished the hypothetical situation described in *Canton* with the single *Brady* violation at issue in *Connick* because *Canton* involved an "obvious need for specific legal training," novice officers would not have that legal knowledge without training, and "[a]rmed police must sometimes make split-second decisions with life-or-death consequences." *Connick*, 563 U.S. at 64. By contrast, prosecutors are trained attorneys who have licensing requirements and continuing-education obligations and who experience on the job training. *Id.* at 64–66. As a result, "recurring constitutional violations are not the obvious consequence of failing to provide prosecutors with formal in-house training about how to obey the law." *Id.* at

66 (quotation marks omitted); *see also Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997) (explaining that *Canton* "hypothesized that, in a narrow range of circumstances, a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations").

The facts alleged in this case are not similar enough to those hypothesized in *Canton* to find that Lt. Deramus and Sgt. Boackle violated a clearly established right by failing to train or supervise their subordinates. Unlike in *Canton*, where the Court hypothesized a situation in which police officers who had received no training on the legal limits of the use of deadly force needed to make split-second decisions about using firearms, this case involves police officers' use and protection of confidential informants over lengthy periods of time, an area peculiarly within the expertise of law enforcement. *Compare Canton*, 489 U.S. at 390 & n.10, *with* (doc. 4 ¶¶ 4). As the Eleventh Circuit has stated when rejecting the single-incident theory of liability in other contexts, "[u]nlike the risk from a particular glaring omission in a training regimen, the risk from these possible imperfections, if any . . . is not obvious in the abstract." *Gold v. City of Miami*, 151 F.3d 1346, 1352 (11th Cir. 1998) (quotation marks omitted). The court **WILL GRANT** the motion to dismiss the individual liability claims against Lt. Deramus and Sgt. Boackle in Count Five based on qualified immunity.

5.    Supplemental Jurisdiction

Plaintiffs' remaining claims (in Counts Two and Three) arise under state law. (*See* doc. 4 ¶¶ 58–67). The court had jurisdiction over the state law claims based on its supplemental jurisdiction under 28 U.S.C. § 1367(a). But, as the court has explained, the court must dismiss all of Plaintiffs' federal claims. And where the court "has dismissed all claims over which it has original jurisdiction," the court "may decline to exercise supplemental jurisdiction" over any remaining state law claims. *Id.* § 1367(c). The Eleventh Circuit encourages district courts to do so if all federal claims are dismissed before trial. *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004). Although "[t]he running of a state statute of limitations is an important factor for the district court to consider when deciding whether to dismiss a pendent claim," *Edwards v. Okaloosa Cnty.*, 5 F.3d 1431, 1433 (11th Cir. 1993), the dismissal of the state law claims does not prejudice Plaintiffs because, although they filed their claims in federal court on the last day of the limitations period, "[t]he period of limitations for any claim asserted under [supplemental jurisdiction] . . . shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period," 28 U.S.C. § 1367(d). This court therefore **DECLINES** to exercise supplemental jurisdiction over Plaintiffs' state law claims.

## III.    CONCLUSION

The court **WILL DISMISS** the official capacity claims asserted in Counts One, Four, and Five **WITHOUT PREJUDICE** based on Defendants' entitlement to Eleventh Amendment immunity. The court **WILL DISMISS** the individual capacity claims asserted in Counts One and Five **WITH PREJUDICE** because Lt. Deramus, Sgt. Boackle, Lt. Washington, Detectives Stewart and Brasher, and the two fictitious defendants are entitled to qualified immunity. These rulings result in the dismissal of all federal claims (Counts One, Four, and Five). The court **DECLINES** to exercise supplemental jurisdiction over the state law claims asserted in Counts Two and Three and **WILL DISMISS** those claims **WITHOUT PREJUDICE**.

**DONE** and **ORDERED** this December 9, 2024.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE